Herbert F. SEARS, Petitioner,

v.

**DEPARTMENT OF THE NAVY,**
Respondent.

No. 81–1663.

United States Court of Appeals,
First Circuit.

Argued March 2, 1982.

Decided June 16, 1982.

---

Robert F. Stewart, Jr., and Karl A. Fritton, Philadelphia, Pa., with whom Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., Raymond J. Daniels and Kirshenbaum & Kirshenbaum, Providence, R. I., were on brief, for petitioner.

Major James Messer, U. S. M. C., Dept. of the Navy, Washington, D. C., with whom Lincoln C. Almond, U. S. Atty., and Robert L. Gammell, Asst. U. S. Atty., Providence, R. I., were on brief, for respondent.

Before COFFIN, Chief Judge, and ALDRICH and BREYER, Circuit Judges.

BREYER, Circuit Judge.

The Civil Service Reform Act of 1978 provides that, when an agency examines an employee as part of a possible disciplinary investigation, it must allow a union representative to be present if the employee so requests. 5 U.S.C. § 7114(a)(2)(B). The statute states specifically that each agency "shall annually inform its employees" of this right. *Id.* § 7114(a)(3). The sole significant legal issue in this case is whether the Navy had to inform the appellant of this right before examining him on January 12, 1979—the day after the statute took effect—or whether the "annual" notice that the Navy provided all its employees ten days later met its statutory obligation. We hold that, under the circumstances present here, the annual notice was sufficient.

I

Appellant Sears was a purchasing agent employed by the Navy in its Supply Operations Department, Naval Education Training Command, at Newport, Rhode Island. In 1978 one of his co-workers, Mary Mead, wrote a note to Navy officials accusing Sears of "robbing from [the] Government." The Navy asked her to watch Sears. And, in November 1978, she gave the Navy a statement in which she described his taking saw blades, lime, roofing nails, paint, wax paper, toilet paper and "cold patch." On January 12, 1979 (the day after the Civil Service Reform Act took effect), Navy investigators examined Sears. They told him he could remain silent, that he could have a lawyer present, that he could leave the interview at any time, and that whatever he said could be used against him in a court of law. Sears signed a statement waiving these rights. He then signed another statement in which he admitted taking most of the items involved—the total value of which, he now states, was under $50. That same day, the Rhode Island command heard from the Chief of Naval Operations in Washington about the "right of union presence" under the new Civil Service Act. And, by January 22, it had informed all its employees. A few weeks later, on March 2, Navy officers again met with Sears—this time with a union representative present. And, Sears repeated his earlier admissions.

On April 6, 1979, the Navy dismissed Sears. He appealed to the Merit Systems Protection Board. After a hearing, the Board's presiding official found that the Navy had proved its case by a "preponderance of the evidence," 5 U.S.C. § 7701(c)(1)(B). Sears appealed to the full Board, which upheld the Navy. And, Sears now appeals to us, 5 U.S.C. § 7703(b)(1). He argues that the Navy's failure to advise him of his "right of union presence" makes his removal unlawful, that the Board's decision is not supported by "substantial evidence," and that his punishment—removal—is too severe, and presumably "arbitrary." *See* 5 U.S.C. § 7703(c). We reject his contentions.

## II

■ The union representation right at issue here is based upon a Supreme Court decision, *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975), which held that Section 7 of the National Labor Relations Act, 29 U.S.C. § 157, grants employees in the *private* sector a qualified right to union assistance at an investigatory interview. In the Civil Service Reform Act, Congress codified a very similar right and applied it to *public* sector employees. The relevant section reads as follows:

(2) An exclusive representative of an appropriate unit in an agency shall be given the opportunity to be represented at—

.      .      .      .      .

(B) any examination of an employee in the unit by a representative of the agency in connection with an investigation if—

(i) the employee reasonably believes that the examination may result in disciplinary action against the employee; and

(ii) the employee requests representation.

(3) Each agency shall annually inform its employees of their rights under paragraph (2)(B) of this subsection.

5 U.S.C. § 7114(a). When the Act was passed, the House and Senate specifically considered the problem of "notice." As originally passed by the House, the bill stated that, before any investigatory interview, "the employee shall be informed" of his right to have a union representative present. S.2640, 95th Cong., 2d Sess. § 701, U.S.Code Cong. & Admin.News 1978, p. 2723, 124 Cong.Rec. 29221, 29246 (Sept. 13, 1978) (Subpart F, Chapter 71, § 7114(a)(2)). The Senate bill contained no *Weingarten* -type provision. Eventually, the conferees adopted a compromise: they would include the *Weingarten* -type right, but they would also water down the notification provision. The conferees agreed to adopt the wording in the House bill with an amendment deleting the House provision requiring the agency to inform employees before certain investigatory interviews of the right to representation, and substituting a requirement that each agency inform its employees annually of the right to representation.

S.Rep.No.1272, 95th Cong., 2d Sess. 155–56 (1978) (conference report); H.R.Rep.No. 1717, 95th Cong., 2d Sess. 155–56, *reprinted in* 124 Cong.Rec. 33728–72 (1978) (same).

The Navy has complied with the literal language of the Act, for it has provided annual notice. The issue before us is whether we are to read into the Act a requirement that employees be notified specifically of their *Weingarten* -type right in the period before the agency's *first* annual notice. Given the Act's language and history, one could, in principle, make a strong argument either way.

On the one hand, one might claim that the issue of notice was precisely what the House/Senate argument was about. Congress came down on the side of agency convenience and simplified investigation, despite the fact that, as a practical matter, annual notice in an agency bulletin may, for many employees, be no notice at all. Of course, lack of notice during the first few days, or weeks, or months of the Act's life may work a particular hardship on the employee. But, conversely, a requirement to give instantaneous notice during the initial period of applicability of a complex new act—when agency mistakes, through unfamiliarity, are particularly likely—would work a hardship on the agency. Therefore, the courts should take Congress at its word and not infer an additional notice requirement above and beyond what the statute expressly states.

On the other hand, one might point to the annual notice requirement and to the statement of the conferees as showing that *some* notice was intended. In the initial start-up period Sears, and others like him, had no notice at all of their right. Thus, an additional implied requirement is needed to carry out Congress' intent.

There is little in the statute's language or history to guide us in choosing between these two views. This fact leads us to decide this issue on more narrow grounds: we believe that Congress, at a minimum, did not intend the courts to read a "specific notice" requirement into the Act where failure to give notice did not cause substantial harm. We embrace this ground partly on the basis of the legislature's silence, partly because of the administrative difficulties inherent in seeking to implement a complex new act on the very day it takes effect, and partly in consequence of the basic principle, running throughout the Civil Service Reform Act, that an employee must show that an error is "harmful" when he seeks to overturn an agency's decision. 5 U.S.C. § 7701(c)(2)(A). Cf. 5 C.F.R. §§ 1201.56(b)(1) and (c)(3). These three factors lead us to conclude that, at least where the agency gave annual notice only a few days after the Act's effective date, an employee must show that failure to give him prior notice significantly interfered with the purposes of the Weingarten-type provision. Otherwise, we are quite certain Congress would not have wanted courts to infer a "specific notice" requirement from statutory silence.

In this case Sears can show no significant harm to an interest protected by the statute. If the interest protected is that of allowing the employee to have someone with him to advise him, that interest was satisfied by the Navy's telling Sears of his right to counsel, his right to remain silent, his right to postpone or terminate the interview, and the possibility of legal proceedings. These warnings ought to have alerted Sears to the seriousness of his situation, the likely need for counsel, and his right to obtain it. The further interview on March 2 with a union representative present provided further protection, for Sears might then have repudiated his January admissions and remained silent, had he been advised (or decided) to do so. Instead, he repeated his confession—by no means a foolish course of action, considering the evidence against him and the fact that his main defense rests on the small value of the items taken. Of course, had he known of the right to union representation in January, he might have requested such representation, the representative might have counseled silence, and the Navy might then have failed to build a case against him. One cannot prove the contrary. But, this speculative chain of "might have beens" is not sufficient to make out a showing of likely significant harm to a Weingarten-type interest, once his right to counsel was made clearly apparent. Moreover, insofar as the Act is viewed as protecting the union's interest in, say, pursuing a later grievance (the Act, unlike Weingarten itself, says that the union representative shall be given "the opportunity to be represented"), its objective was satisfied when union representatives were informed and asked to be present on March 2. Finally, we note that this is not a case in which the agency postponed its "annual notification" weeks or months after the Act took effect. Hence there is no basis for requiring specific notice (before the first annual notice) as a prophylactic device to encourage agencies to carry out the general notice obligations of the statute. For these reasons, we uphold the Merit Systems Protection Board's decision from attack on grounds of "inadequate notice" of the Act's Weingarten-type right.

■ Once it is established that the Board properly considered Sears' admissions, the evidence against him before the Board was more than substantial. 5 U.S.C. § 7703(c)(3). Sears' own words were corroborated by affidavits, including one from Mead, stating that he had taken several items. Although Sears objects to the Mead affidavit as "hearsay," it is well established that hearsay evidence is admissible in administrative proceedings. Richardson v. Perales, 402 U.S. 389, 407–08, 91 S.Ct. 1420, 1430, 28 L.Ed.2d 842 (1971). Moreover, Sears did not object to this "hearsay" below; he did not request the Government to produce Mead, nor did he seek to use the Board's subpoena power to obtain Mead's testimony himself. See 5 U.S.C. § 7132; 5 C.F.R. §§ 1201.71–85 (1982). Thus, his

complaint here now is without merit. *See Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980).

 Finally, Sears asks us to review the penalty of removal, which he argues is disproportionate to his taking government items of so little value. Review at this point is limited to determining whether the "severity" of this "corrective action . . . appears totally unwarranted." *Rotolo v. Merit Systems Protection Board*, 636 F.2d 6, 8 (1st Cir. 1980). The Board found the punishment reasonable in light of Sears' special obligations as a purchasing officer and the Navy's interest in punishing by discharge even small thefts by a purchasing officer. It seems to us that it is reasonable for the Navy to look upon thefts—small or large—by a purchasing officer as a serious matter. And, we find no basis for overturning the Board's conclusion.

For these reasons the decision of the Board is

*Affirmed.*