ment, financial planning, and real estate planning.

Appellants' argument primarily rests on equity. Mrs. Miller's severe physical limitations preclude her traveling to Bermuda to litigate this action there; it would present no significant burden for Honda to litigate in Massachusetts. Such an argument, although emotive, cannot deter us from being fair to *all* parties. It would be contrary to long established legal doctrine to apply the corporate disregard doctrine to the relationship between Honda and American Honda. Even where there is a common control of a group of separate corporations engaged in a single enterprise, failure to meet the criteria established in *My Bread Baking Co., supra,* will defeat any attempt to pierce the corporate veil. *See NCR Credit Corporation v. Underground Camera, Inc.,* 581 F.Supp. 609, 612 (D.Mass.1984). After all, there is nothing fraudulent or against public policy in limiting one's liability by the appropriate use of corporate insulation. While sympathetic to the appellants' tragedy, we cannot find any legal basis for assumption of *in personam* jurisdiction over Honda. For these reasons the decision of the district court is

*Affirmed.*

Manuel O. BEAUCHAMP,
Plaintiff, Appellant,

v.

Luisa DE ABADIA, et al.,
Defendants, Appellees.

No. 85–1277.

United States Court of Appeals,
First Circuit.

Argued Sept. 11, 1985.

Decided Dec. 23, 1985.

Ramon L. Walker Merino with whom Hector M. Alvarado Tizol and Alvarado Ti-

zol & Walker Merino, San Juan, P.R., were on brief for appellant.

Reina Colon De Rodriguez, Asst. Sol. Gen., Dept. of Justice, with whom Hector Rivera Cruz, Atty. Gen., San Juan, P.R., was on brief for appellees.

Before COFFIN, Circuit Judge, ALD-RICH, Senior Circuit Judge, and WIS-DOM,* Senior Circuit Judge.

WISDOM, Senior Circuit Judge.

The plaintiff-appellant filed suit under 42 U.S.C. § 1983 seeking judicial review of a state agency's decision to revoke his license to practice medicine. The district court found that his right to procedural due process was not violated and dismissed the suit. We affirm.

## I.

Manuel O. Beauchamp, the plaintiff-appellant, studied medicine at the Universidad Autonoma de Santo Domingo (the University) in the Dominican Republic. In 1973 he submitted a copy of his medical school transcript to the Board of Medical Examiners of Puerto Rico (the Board). On the basis of this document, showing that Beauchamp was graduated from the University, the Board permitted Beauchamp to serve as an intern at a government hospital. He did not finish the internship. In December 1976 he began a second internship, which he completed successfully. The Board allowed Beauchamp to take its three-part examination for a license to practice medicine. He failed all three parts of the exam in February 1976; he failed Part II in August 1976. He passed Part III in March 1977, and Parts I and II in February 1979. That same month, a member of the Board approved Beauchamp's application for a license, although the license was withheld by the full Board.

While Beauchamp was completing the application process, the Board and the De-partment of Justice of the Commonwealth of Puerto Rico were conducting a joint investigation of fraudulent medical license applications. This was apparently the reason that Beauchamp's license was withheld. His case came to the attention of the agencies when they received a transcript of his grades sent directly from the University in Santo Domingo. The transcript showed that Beauchamp had completed only about half of the medical school's four year curriculum and was not graduated.

In June 1979, the President of the Board met with Beauchamp to tell him that "certain information" had been received from the University suggesting that Beauchamp was not graduated from the medical school. At a hearing in September 1981, Beauchamp introduced the 1973 documents certifying that he was graduated. The plaintiff alleged that he had been unable to find the University's original records because they were lost or destroyed when the army occupied the campus. He also introduced testimony from the Dean, the former Registrar, and the former sub-Registrar of the University that their signatures on the 1973 documents were authentic. The Dean, however, was suspected of complicity in forging transcripts and diplomas after 1973. Furthermore, the University suspended the Dean because he testified on behalf of Beauchamp. The suspension was imposed because the administrators of the University believed Beauchamp was not graduated and the Dean's testimony hurt the reputation of the University. The hearing examiner recommended granting Beauchamp's license, but the Board rejected his recommendation.

Beauchamp then filed an action under 42 U.S.C. § 1983, alleging that the Board had deprived him of property without due process of law. The district court held that Beauchamp had a "vested right to practice medicine", and ordered the Board to hold a full hearing before revoking his license.[1]

---

* Of the Fifth Circuit, sitting by designation.

1. The district court found that Beauchamp had qualified to practice medicine and had therefore received his license, even though it was "withheld" by the Board. For this reason, the court ordered a revocation hearing.

The court retained its jurisdiction over the case pending the hearing. At the revocation hearing, a different hearing examiner heard testimony from officials who had investigated allegations that individuals, including Beauchamp, were being licensed to practice medicine in Puerto Rico on the basis of fraudulent documents issued under the name of the Universidad Autonoma. The investigators testified that they had examined Beauchamp's file at the University and that these records showed that he was not graduated. They also testified that the University's interim Registrar confirmed that Beauchamp was not graduated. On the basis of this testimony and the documents collected by the investigators, the hearing examiner recommended revocation of Beauchamp's license, and the Board adopted his recommendation.

Beauchamp again petitioned the district court for relief rather than appeal to the Superior Court of Puerto Rico. The district court dismissed the plaintiff's action on the grounds that the hearing satisfied the requirements of the due process clause and that the hearing examiner's conclusion that Beauchamp submitted a false transcript was supported by substantial evidence. Beauchamp has appealed.

## II.

■ Beauchamp unquestionably had a protected interest in his license to practice medicine. A clearer example of "new property" is not easily imagined. *See Kudish v. Bradley*, 698 F.2d 59, 61 (1st Cir.1983); *Keney v. Derbyshire*, 718 F.2d 352, 354 (10th Cir.1983); *cf. Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). The district court's holding that he had a right to a hearing before his license could be revoked was correct. *Cf. Cleveland Board of Education v. Loudermill*, — U.S. ——, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Brasslett v. Cota*, 761 F.2d 827 (1st Cir.1985).

The district court's finding that Beauchamp had, in effect, received a license to practice medicine is not clearly erroneous. We will

■ On this appeal we assess the sufficiency of the procedural safeguards employed at the hearing, not the sufficiency of the evidence against Beauchamp. He had a right to appeal the merits of the Board's decision to the Superior Court of Puerto Rico. P.R.Law Ann. tit. 20, § 52 (Supp.1984). Instead, he filed this § 1983 suit and asserted that the Board denied him due process of law. He makes four arguments to support his claim for relief. First, he contends that the hearing examiner relied on hearsay evidence in making his decision. Second, he complains that he was not able to cross-examine his accusers. Third, the Board members, he alleges, were biased against him because they have a pecuniary interest in the outcome of his case. Fourth, he argues that the decision of the hearing examiner was not supported by substantial evidence. These arguments are unconvincing.

■ A state agency need not apply the Federal Rules of Evidence to comport with the requirements of the due process clause. It is well established that hearsay evidence is admissible in administrative proceedings if it is relevant. *See Richardson v. Perales*, 402 U.S. 389, 407–08, 91 S.Ct. 1420, 1430–31, 28 L.Ed.2d 842 (1971); *Sears v. Department of the Navy*, 680 F.2d 863, 866 (1st Cir.1982); R. Pierce, S. Shapiro & P. Verkuil, *Administrative Law and Process* § 6.4.3c, at 304 (1985). Furthermore, the plaintiff has conceded that most of the documentary evidence relied on by the hearing examiner would have been admissible even under the Federal Rules.

Beauchamp was allowed to cross-examine all of the persons who testified against him at the hearing. He was unable to cross-examine two University officials because they did not testify. Their statements were admitted as hearsay evidence and his argument that he was unable to cross-examine his accusers seems to overlap his objection to the admission of hearsay evidence against him. The principle

treat this case as if Beauchamp's license had been revoked.

that hearsay evidence is admissible in administrative proceedings would be vitiated if a party could object to its admission on the ground that he was denied his right to cross-examination. The right to cross-examination, although important and useful, is not absolute. *See Wolff v. McDonnell,* 418 U.S. 539, 568–69, 94 S.Ct. 2963, 2980–81, 41 L.Ed.2d 935 (1974); Friendly, *Some Kind of Hearing,* 123 U.Pa.L.Rev. 1267, 1285–86 (1975). Beauchamp was able to cross-examine the investigators who testified against him and he was allowed to present all the evidence he thought relevant to his cause. That was sufficient in this case for purposes of the due process clause.

Beauchamp alleges that he was denied an unbiased tribunal. An impartial decisionmaker is, of course, a fundamental component of due process. *See* Friendly, *Some Kind of Hearing,* 123 U.Pa.L.Rev. 1267, 1279 (1975). In this case, however, the charge of bias is unsubstantiated. As the district court correctly found, the hearing examiner was "a neutral and detached officer" chosen for his impartiality. Beauchamp contends that the members of the Board have a pecuniary interest in his case because he has sued them in their individual capacities. If that were sufficient to disqualify the Board, any applicant could do so simply by filing a lawsuit. Beauchamp's argument must fail.

■ Finally, Beauchamp suggests that we should review the whole record for substantial evidence supporting the Board's decision. This Court is not authorized to do so, however. The Commonwealth's Superior Court was the proper forum for review of the administrative decision, and Puerto Rican administrative law would have applied. As long as there is some evidence in the record to support the Board's decision, there was no due process violation. *See Superintendent, Massachusetts Correctional Institution v. Hill,* —— U.S. ——, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985); *Konigsburg v. State Bar of California,* 353 U.S. 252, 262, 77 S.Ct. 722, 727, 1 L.Ed.2d 810 (1957). The testimony

of the Puerto Rican investigators and the documents received from the University were certainly rational evidence against Beauchamp and sufficient to satisfy the due process clause.

### III.

Beauchamp received a fair administrative hearing. He had a right to judicial review in the Superior Court of Puerto Rico but he declined to exercise it. The order of the district court dismissing his case is AFFIRMED.