Christine GAMMONS, et al., Plaintiffs,

v.

MASSACHUSETTS DEPARTMENT OF HOUSING AND COMMUNITY DE-VELOPMENT, et al., Defendants.

Civil Action No. 07–10110–PBS.

United States District Court, D. Massachusetts.

May 9, 2007.

162

Goutam U. Jois, Clarissa Hutchins Bronson, Harvard Legal Aid Bureau, Cambridge, MA, for Plaintiffs.

Kenneth W. Salinger, Massachusetts Attorney General's Office, James J. Duane, III, Taylor, Duane, Barton & Gilman, LLP, Anthony J. Cichello, Hugh Dun Rappaport, Richard M. Bluestein, Krokidas & Bluestein, Boston, MA, Andrew R. Weiner, Taylor, Duane, Barton & Gilman, LLP, Providence, RI, for Defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### INTRODUCTION

Plaintiff Christine Gammons, on behalf of herself and her minor children, challenges the termination of her family's Section 8 Housing Choice Voucher subsidy.[1]

---

1. The defendants in this case are the Massachusetts Department of Housing and Community Development ("DHCD"); Tina Brooks, the current Director of DHCD; Metropolitan Boston Housing Partnership ("MBHP"); Julia Kehoe, the Executive Director of MBHP; Birgitta Damon, Director of Leased Housing for MBHP; Melinda Koenig, the Manager of Family Self–Sufficiency for MBHP; Jim Bianchi, an employee of MBHP; and Jane Doe, an unnamed employee of MBHP. Plaintiffs filed a stipulation of dismissal for all claims asserted against Jane Wallis Gumble individually

On January 22, 2007, plaintiffs filed the instant action pursuant to 42 U.S.C. § 1983, Mass Gen. L. ch. 30A, §§ 1, 10, 11, and the state and federal constitution alleging that the procedures employed by the government during their termination hearings violated their due process rights and that the decision to terminate their Section 8 subsidy was not supported by a preponderance of the evidence. Plaintiffs seek a preliminary injunction requiring the government to reinstate the family's Section 8 voucher subsidy. After a non-evidentiary hearing, the Court **DENIES** the plaintiffs' motion.

### FACTS

#### 1. *Regulatory Background*

The Massachusetts Department of Housing and Community Development ("DHCD") has a limited pool of housing subsidies for low-income individuals and families under the Federal Department of Housing and Urban Development's Section 8 Housing Choice Voucher Program. DHCD's Section 8 vouchers are administered by eight regional agencies. The Metropolitan Boston Housing Partnership ("MBHP") is the regional public housing agency responsible for the greater Boston area.

Eligibility for a Section 8 housing voucher is determined by several factors, including total annual gross income and family size. Furthermore, the "income of all family members, including family members not related by blood or marriage," must be taken into account in calculating the amount of a family's Section 8 voucher. 24 C.F.R. § 982.516(e). A family that applies for or receives a voucher "must supply any information requested by the [state or federal government regarding] family income and composition." 24 C.F.R.

§ 982.551(b)(2). "Any information supplied by the family must be true and complete." 24 C.F.R. § 982.551(b)(4). In addition, all Section 8 voucher recipients in Boston must seek and obtain the approval of MBHP "to add any other family member as an occupant of the unit. No other person may reside in the unit. . . ." 24 C.F.R. § 982.552(h).

Participation in the program may be terminated "[i]f the family violates any family obligations under the program," "[i]f any member of the family has committed fraud . . . in connection with any Federal housing program," or for other specified reasons. 24 C.F.R. § 982.552(c)(i), (iv). A family is entitled to an "informal hearing" by the local public housing agency before it is terminated. *See* 24 C.F.R. § 982.555. 24 C.F.R. § 982.555(e)(6) provides that in all hearings conducted by a public housing agency, "Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing."

#### 2. *Factual Background*

The record supports the following facts, which are largely undisputed. On June 27, 2006, Gammons was notified that her Section 8 voucher would be terminated on the ground that her husband Andrew Williams was living with her, and she did not list him as a member of her household on her Section 8 applications. Gammons appealed this initial determination. As a result, in August 2006 MBHP held an "informal hearing" to review the initial revocation of the Section 8 voucher. Gammons was represented at the MBHP informal hearing by the Tenant Advocacy Project at Harvard Law School. The government presented their witnesses; Gammons's repre-

and all claims for compensatory or punitive damages against DHCD and Tina Brooks.

sentatives cross-examined both of the MBHP witnesses. In addition, Gammons testified at the informal hearing.

At this hearing, the following facts were elicited. Plaintiff Gammons and her family had been receiving a Section 8 subsidy through MBHP for several years. At first, Gammons listed Andrew Williams, her husband, as a member of her household at an apartment in Haverhill, but subsequently removed him from the lease. In 2004, while Gammons was living at 170 Linwood Street in Malden, she informed MBHP that Williams had rejoined the household. MBHP recalculated the subsidy to include Williams's wages, and informed Gammons that effective October 1, 2004, her Section 8 subsidy would be reduced. A few weeks later, on October 21, 2004, Gammons wrote MBHP and stated that Williams had moved out. As a result, Gammons's subsidy was increased.

On June 1, 2005, Gammons moved to 90 Endicott Street in Revere. After moving, she did not list Williams as a member of the household. Gammons provided MBHP with a signed "Family Certification Form" on February 27, 2006, that again did not list Williams as a member of the household.

In June 2006, MBHP inspectors attempted to conduct an annual inspection of Gammons's apartment. They observed several pieces of mail addressed to Williams at the 90 Endicott Street address. The inspectors also spoke with Gammons's landlord, Susan Coppola, who claimed that Williams was living in the unit.

At the informal hearing on August 10, 2006, MBHP presented evidence through two witnesses, investigators for the MBHP. One witness testified that Gammons's landlord Susan Coppola had stated that Williams was living with Gammons in the 90 Endicott Street apartment. The

MBHP inspector also reported that the Registry of Motor Vehicles ("RMV") records indicated that Williams had a driver's license that listed the 90 Endicott Street property as his address. The inspector also presented copies of various documents, including a copy of a bill addressed to 90 Endicott Street in Williams's name and a joint checking account for Williams and Gammons that was maintained through March 2006. Finally, the inspector produced information about Williams's current employment at Federal Express to establish his present level of income.

Plaintiff testified that although Williams did stay at her apartment frequently, he was not living there full time. She also made Williams change his legal address on August 10, 2006, because his presence was getting her in trouble with MBHP. Gammons also presented a letter from her landlord, Ms. Coppola, "stating that a D. Williams did not live there."

After considering all the evidence, on September 1, 2006, the MBHP hearing officer concluded "based upon the overwhelming preponderance of evidence ... that Mr. Williams was an unreported household member and used 90 Endicott Street in Revere as his primary residence." The officer also found that Gammons had provided a false statements to MBHP by omitting Williams and his income from her subsidy applications for several years. The hearing officer for the MBHP held: "I am led to believe you provided false statement, omission, or concealment of substantive fact, made with intent to deceive or mislead; and that you did not list Andrew Williams on your household, knowing he was a permanent resident of your household, as you knew and understood that doing so would increase your family contribution to the rent." Accordingly, the hearing officer upheld the termination of plaintiffs from the

Section 8 program and determined that Gammons was overpaid $6,713 in subsidies because Williams's income had not been reflected in the subsidy calculations. On September 13, 2006, Gammons asked DHCD to review the MBHP decision.

On September 1, 2006, Gammons moved from her apartment, which resulted in the cessation of her right to Section 8 benefits. As Julia E. Kehoe, the Executive Director of MBPH stated in her affidavit, a tenant remains a participant in the Section 8 program during the appeal process unless she moves. Thus, the last payment to Gammons was on September 1, 2006.

On March 5, 2007, the DHCD determined that "the decision of MBHP is supported by the record in this case," and upheld Gammons's termination from the Section 8 voucher program.

## *DISCUSSION*

■ In order to obtain preliminary injunctive relief, plaintiffs have "the burden of showing (1) a likelihood of success on the merits; (2) that they would suffer irreparable injury if injunctive relief were not issued; (3) that such injury outweighs any harm that would stem from granting injunctive relief; and (4) that the public interest weighs in their favor." *Largess v. Supreme Judicial Court for State of Massachusetts*, 373 F.3d 219, 224 n. 2 (1st Cir.2004); *see also Bl(a)ck Tea Soc'y v. City of Boston*, 378 F.3d 8, 11 (1st Cir. 2004).

■ "[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 46 (1st Cir.2005) (quoting *New Comm*

*Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir.2002)).

### 1. *Procedural Due Process*

Plaintiffs claim that the defendants violated their procedural due process rights under the Fourteenth Amendment.[2]

■ Specifically, plaintiffs argue that the presentation of hearsay evidence, coupled with the government's failure to allow her to cross-examine non-testifying witnesses, violated their due process rights. While Gammons cross-examined the witnesses who testified, and introduced her own evidence, she did not have the opportunity to cross-examine the non-testifying landlord, who told the investigators that Andrew Williams, the husband, lived in the apartment. At the hearing, Gammons did not object to the lack of opportunity to conduct a cross-examination or seek a continuance so that the landlord could testify on her behalf. The issue is waived.

■ In any event, it is well established that hearsay evidence is admissible in administrative proceedings, where relevant. *See Richardson v. Perales*, 402 U.S. 389, 407–08, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *see also Sears v. Dep't of the Navy*, 680 F.2d 863, 866 (1st Cir.1982). Therefore, the admission of hearsay statements as evidence is not problematic. "The principle that hearsay evidence is admissible in administrative proceedings would be vitiated," the First Circuit has held, "if a party could object to its admission on the ground that he was denied his right to cross-examin[e]" every person questioned by the government. *Beauchamp v. De Abadia*, 779 F.2d 773, 775–76 (1st Cir.1985). "The right to cross-examination, although important and useful, is not absolute." *Id.* at

---

2. Section 8 does not provide "an individual entitlement enforceable under § 1983." *Johnson v. City of Detroit*, 446 F.3d 614, 627 (6th Cir.2006) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 288, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002)).

776 (citing *Wolff v. McDonnell,* 418 U.S. 539, 568–69, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). Therefore, the use of hearsay at the Section 8 hearing was permissible and did not violate the due process clause.

Plaintiffs also allege that when MBHP forwarded documents for the appeal to DHCD, MBHP failed to provide those documents to Gammons. Shortly after DHCD received the documents, plaintiffs requested them from DHCD, and DHCD promptly turned them over. *See* 24 C.F.R. § 982.555(e)(2) (reciting that the government must turn over certain hearing documents "on request"). Plaintiffs contend that this "ex parte communication" violated their due process rights.

■ Regardless of the delay in forwarding the appeal record to her, Gammons received the materials by November 2006, and DHCD did not render a decision on appeal until March 2007. Given this time frame, it is unlikely that plaintiffs suffered any material prejudice. Moreover, the documents in this case reveal that the plaintiff already possessed most of the documents turned over by MBHP at the time that MBHP made the initial disclosure to DHCD. Plaintiffs also contend that some of the documents turned over to DHCD were not introduced at the hearing. Defendants dispute this assertion. The Court does not have an adequate record for resolving this dispute.

### 2. *Sufficiency of Evidence*

■ Plaintiffs also contend that there was insufficient evidence in the record for the hearing officer to conclude by a preponderance of the evidence that Williams resided at 90 Endicott Street. This Court must accord deference to the factual findings of the public housing agency. *See Clark v. Alexander,* 85 F.3d 146, 151 (4th Cir.1996) ("deference must be shown to the factfinding of local housing authori-

ties"); *see also Ang v. Gonzales,* 430 F.3d 50, 54 (1st Cir.2005) (stating in immigration law context, "we assay the [administrative fact finder's] findings of fact, including credibility determinations, under a highly deferential 'substantial evidence' standard.").

■ Under this deferential standard of review, this Court concludes that plaintiffs have not established a likelihood of success on their argument that the finding of fact that Williams resided at the Endicott Street apartment is not supported by a preponderance of the evidence. Although Ms. Gammons testified that Williams did not reside in the apartment, the investigator told the hearing officer that the landlord stated he resided there. While she sent a letter stating that a "D. Williams" (his name was Andrew) did not live there, several documents—a bill, RMV records, and a bank account—corroborated the conclusion that Williams considered 90 Endicott Street his residence.

Based on all of this information, which is thoroughly catalogued and canvassed in the hearing officer's report, the officer reported: "I very carefully considered the letters you provided showing alternative addresses for Mr. Williams but found it to be overwhelmingly obvious that Mr. Williams uses 90 Endicott street as his primary residence."

Participation in the Section 8 may be terminated "[i]f the family violates any family obligations under the program," or "[i]f any member of the family has committed fraud . . . in connection with any Federal housing program." 24 C.F.R. § 982.552(c)(i), (iv). The evidence that Gammons understood that the subsidy would be decreased if the husband lived with her and understood the government's request to list her husband if he lived there allows a rational fact finder to con-

clude that Gammons either failed to satisfy her obligation under the program to include Williams on the lease or that Gammons possessed an intent to defraud when she failed to list him. The decision to terminate could properly be based on either independent ground.

### 3. *Right to Privacy*

Finally plaintiffs contend that the hearing officer made a constitutionally improper inference by relying on the fact that Gammons had not divorced Williams as one piece of evidence that Williams still lived in the Endicott Street apartment. Plaintiffs, citing to *Moore v. City of E. Cleveland,* 431 U.S. 494, 499, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) and *Lawrence v. Texas,* 539 U.S. 558, 574, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), argue that such an inference "runs afoul of constitutional protections" because personal questions of how to organize a family are a constitutionally protected liberty interest that courts cannot intrude upon.

While the hearing officer gave some weight to the fact that Williams and Gammons remain married, Plaintiff's marital status was relevant to the issue of residency. In any event, it does not appear to have been central to the ultimate decision which was amply supported by other evidence.

### ORDER

The motion for a preliminary injunction [Docket No. 2] is *DENIED.*