DECISION
Petitioner, Robert Sullivan, appeals the decision of the City Personnel Board ("Board") for the City of Providence to terminate his employment as a firefighter. Sullivan requests that this Court reverse the Board's decision and award damages for his lost earnings. Contending that its decision was proper, the Board requests this Court affirm. Because this Court finds, for the reasons set forth below, that the Board's factual conclusions were not clearly erroneous and that its decision to terminate Sullivan was not an arbitrary and capricious abuse of discretion, and that the Board's decision was not tainted by the other claimed errors of law, this Court affirms the Board's decision to terminate Sullivan. Jurisdiction of the Superior Court is pursuant to R.I. Gen. Laws § 45-20-1.
 I Facts and Travel
On April 20, 1991, Robert Sullivan ("Sullivan") was arrested and charged with First Degree Arson. At the time of his arrest, Sullivan was employed by the Providence Fire Department as a fireman. The criminal charges against Sullivan alleged that on April 20, 1991, Sullivan's wife ("Mrs. Sullivan") summoned the police during a nonviolent domestic disturbance. Upon police arrival, Mr. Sullivan was seen running naked outside of his house while *Page 2 
his infant child allegedly remained inside. While investigating, the police officer observed Mr. Sullivan pouring clear liquid on a small fire on the interior stairs of the home. The fire department was called to the scene and arrived within three minutes. Prior to the fire department's arrival, Sullivan extinguished the fire. A kerosene heater and fuel tank were seen by investigating officers on the second floor landing. Sullivan told the police and fire investigators, that the fire was set accidentally while he was pouring kerosene into the heater. The authorities concluded otherwise.
Two months later, in June 1991, Sullivan was indicted by a Providence County Grand Jury on one count of First Degree Arson. The indictment alleged:
 "Robert E. Sullivan . . . on or about the 20th day of April 1991 . . . did knowingly cause, procure, aid, counsel, and create by means of fire, a substantial risk of serious physical harm to others and damage to the building located at 37 Trask Street, Providence, which was a residential structure on April 20, 1991, and occupied and in use."
On August 2, 1991, following his indictment, Sullivan was informed that he was suspended with pay pending the preferral of departmental charges and a hearing for violation of the Rules and Regulations of the Providence Fire Department. Also on August 2, 1991, the Chief of the Providence Fire Department, Gilbert H. McLaughlin, informed Acting Commissioner of Public Safety, Vincent A. Cianci, Jr., of the preferral of charges against Sullivan. Notably, the charges were based solely on the events of April 20, 1991. The seven charges were as follows:
 Charge I: Violation of Chapter 17, Paragraph 4 of the Rules and Regulations of the Providence Fire Department which provides: "Members shall obey all laws, rules and regulations, orders and commands. Such obedience shall be prompt, implicit and unqualified."
 Specification: Robert E. Sullivan of Providence County, did knowingly cause, procure, aid, counsel, and create by means of fire, a substantial risk of serious physical harm to others and damage to the building located at 37 Trask Street, *Page 3 
Providence, which was a residential structure on April 20, 1991, and occupied and in use.
 Charge II: Violation of Chapter 17, Paragraph 6 of the Rules and Regulations of the Providence Fire Department which provides: "In matters of general conduct, not within the scope of these Rules and Regulations members shall be governed by customary rules of good behavior observed by law-abiding and self-respecting citizens. In all cases where members conduct themselves in a manner that may bring reproach or reflect discredit upon the Department, charges shall be preferred."
 Specification: [Same as Charge I, above.]
 Charge III: Violation of Chapter 17, Paragraph 8(a) of the Rules and Regulations of the Providence Fire Department which provides: "Members of the Department shall not violate their oath of office."
 Specification: [Same as Charge I, above.]
 Charge IV: Violation of Chapter 17, Paragraph 8(b) of the Rules and Regulations of the Providence Fire Department which provides: "Members of the Department shall not neglect nor shirk any duty."
 Specification: [Same as Charge I, above.]
 Charge V: Violation of Chapter 17, Paragraph 8(i) of the Rules and Regulations of the Providence Fire Department which provides: "Members of the Department shall not engage in any altercation, commit any assault nor violate any law, nor do anything for which they may be arrested."
 Specification: [Same as Charge I, above.]
 Charge VI: Violation of Chapter 17, Paragraph 8(j) of the Rules and Regulations of the Providence Fire Department which provides: "Members of the Department shall not make a false statement, or report with intent to deceive."
 Specification: Robert E. Sullivan of Providence County, did knowingly cause, procure, aid, counsel, and create by means of fire, a substantial risk of serious physical harm to others and damage to the building located at 37 Trask Street, Providence, which was a residential structure on April 20, 1991, and occupied and in use. Thereafter, Robert E. Sullivan did make a false statement or report with intent to deceive in the investigation on the above date.
 Charge VII: Violation of Chapter 17, paragraph 8(k) of the Rules and Regulations of the Providence Fire Department which provides: "Members of the Department shall not do anything which may bring discredit upon the Department." *Page 4 
 Specification: [Same as Charge I, above.]
By letter dated August 20, 1991, Sullivan was notified that there would be a hearing before the Board where he could answer the seven charges. The hearing was scheduled for August 29, 1991. The three member Board consisted of a probate judge, who served as Chairmen, as well as the City's Director of Personnel and the Director of Administration. Because Sullivan's original counsel failed to appear at the August 29, 1991 hearing, Sullivan was granted a continuance of one week so his new counsel could adequately prepare the case. No evidence was heard at the August 29, 1991 hearing.
On September 5, 1991, the Board heard evidence as well as argument from Sullivan's counsel and the City's counsel. At the outset, the City made its position clear: Sullivan intentionally set fire to his home and attempted to flee the scene knowing his infant child was alone in the house; accordingly, the City felt the only appropriate sanction was termination. The City asserted it would prove its case by presenting documentary evidence as well as presenting three prosecuting witnesses.
Through counsel, Sullivan would posit a contrary narrative. Although Sullivan presented no witnesses, through cross-examination of the City's witnesses and his own witness statements, Sullivan would advance a competing version of the events of April 20, 1991: unclothed before retiring to bed, the fire ignited accidentally while he attempted to fill his family's only source of heat; he then rushed his child to safety before returning to successfully extinguish the fire; accordingly, Sullivan felt entitled to reinstatement and back pay.
The first evidence introduced by the City was a tape recording of the9-1-1 call made by Mrs. Sullivan. Sullivan unsuccessfully objected to the tape's admission on several grounds.[1] *Page 5 
The City's first witness was John Whalen ("Whalen"), a Providence Police Officer. Whalen was the first responder on April 20, 1991. Whalen testified that, upon arrival, he observed Sullivan, naked, exiting a vehicle parked outside the Sullivan home, and running into the house. Over Sullivan's hearsay objections, Whalen testified to Mrs. Sullivan's statements that Sullivan was "drunk and . . . [had been] acting crazy." Whalen also testified that she told him she "was afraid . . . [and] wanted to get her baby out of the house."
Whalen further testified that from the porch of the Sullivan home, he saw Sullivan throwing a clear liquid, which at the time he assumed was water, on flames on the interior stairs. According to Whalen, Sullivan responded to his presence with profanity and denied him entry by slamming the door when he and Mrs. Sullivan attempted to enter the house. Shut out of the house with Mrs. Sullivan, Whalen observed Sullivan throwing various household items from a window of the residence. Whalen testified that Mrs. Sullivan did not know the source of the fire and that the fire was extinguished prior the fire department's arrival. Whalen told the Board Mrs. Sullivan was unaware of the fire until after she called 9-1-1. Whalen testified that he called the Fire Department to the scene, and that they arrived in under three minutes. Whalen denied communicating to any fire department personnel that the fire was intentionally set.
Contrary to Sullivan's alleged treatment of Whalen, when the Fire Department personnel arrived, he allowed them to enter and appeared relaxed and familiar with the firefighters. Whalen testified that after the fire department arrived, Mrs. Sullivan retrieved the infant from the second floor and returned downstairs with the child. However, Whalen conceded that he did not include any information in his report regarding the location from which Mrs. Sullivan retrieved the child. *Page 6 
Captain Richard T. Dusso ("Dusso") of the Providence Fire Department, who accompanied the first group of responding firemen, was the City's second witness. Dusso observed that the heater was not hot and lacked any evidence of scorching on the exterior of the unit. After observing the Sullivan home, Dusso called for an arson investigator.
The City's third witness was Terrance W. Doyle ("Doyle"), an inspector from the Providence Fire Department's Arson Prevention Unit. Doyle testified as an expert in the field of arson investigation. Upon Doyle's arrival on April 20, 1991, the fire was extinguished and he did not observe any smoke or steam. He reported observing evidence that there had been a small fire confined to the upper stairs, and observed some burnt debris which included the remains of a curtain and a curtain rod, and possible food product. Like Dusso and Whalen, Doyle observed the kerosene heater and fuel container at the top of the landing. According to Doyle, the second floor landing had no evidence of charring or burning. Doyle testified that upon his arrival, the heater was cold and the heater's control knob was in the "off" position. He observed the heater in "good" condition and the fuel container in "excellent" condition. He also testified that a book of matches was found at the bottom of the stairs.
Doyle explained that he did not suspect that the heater or fuel container was involved in the fire; this, he explained, was the reason he did not seize it during his initial investigation. Doyle also testified that samples of the charring were taken by another inspector and that the samples were sent to the University of Rhode Island Crime Lab for analysis. Evidence of the results of the analysis was not introduced at any of the hearings.
Sullivan gave Doyle the following statement:
 "I came home from watching a fight, I went upstairs to where there is a kerosene heater, I knew it had been on all day and I went to fill it up. I picked up the can and the kerosene splashed on the side of the heater and ignited. The heater is in the hallway right by the stairway." *Page 7 
In response, Doyle returned to the Sullivan home the next morning and seized the heater and fuel container as evidence. Doyle concluded that the heater and fuel container played no part in the origin of the fire. The heater and fuel container were displayed to the Board at the hearing. Doyle conceded that he could not testify to the mechanics or operability of the heater. Inspector Doyle testified that he believed the fire was slow moving and intentionally set in available combustibles on the stairway. Doyle testified that "[t]here was no evidence of any heat source in the area other than intentional source of heat to ignite debris." Doyle opined that the fire was intentionally set in available combustibles on the stairway.
In closing arguments, the City reiterated its position that Sullivan intentionally set the fire and attempted to flee the home with his infant child inside. Sullivan argued that his intent to retire to bed for the evening explained his nakedness. Sullivan argued that he was outside when the police arrived, not because he was attempting to leave the scene, but rather, because he raced outside with the baby when the fire started and then once the baby was safely in the car, and the car was backed away from the house, he returned to complete his task of extinguishing the fire. Following closing arguments, the Board's Chairman closed the hearing and announced, "[a] written decision will be rendered." However, for the next three years, the Board took no action.
On April 4, 1994, a Rhode Island Superior Court jury acquitted Sullivan of First Degree Arson. Soon after, Sullivan requested reinstatement. In support of his request, Sullivan cited Chapter 27, Section 2, Paragraph 4 of the Rules and Regulations of the Department:
 "Whenever a member of the Department shall be suspended from duty under the provision of this section, and shall thereafter, at an inquiry, hearing or trial be found not guilty of the commission of the alleged offense . . . such member shall be reinstated to full duty forthwith, and all wages to which he would have been *Page 8 
entitled but for the suspension, shall be paid over to him in full on the next ensuing Departmental pay day."[2]
The fire department declined Sullivan's request for reinstatement. On April 4, 1995, a third hearing was held; the Board claimed that the matter was "continued from a prior date." Pointing out that the Board had stated that the hearing was closed at the end of the September 5, 1991 hearing, Sullivan objected to the re-commenced hearing stating that it was a violation of due process. The Board was unable to explain its failure to render a decision for over three years. Over Sullivan's objection, the Board heard new unrelated evidence. The judgment of acquittal from the Superior Court disposition was admitted together with correspondence dated March 31, 1995, which argued that Mr. Sullivan should be reinstated, and any further Board action was baseless and without authority or precedent. Sullivan again argued that the Board should follow the proscriptions of Chapter 27, Section 2, paragraph 4 of the Department Rules and Regulations, supra, his interpretation of which mandate that a finding of not guilty in a criminal trial ends the pending charges and specifications. Sullivan also argued that the Board should decide his case in accord with that of another firefighter reinstated to duty after being acquitted of arson charges. Explaining that the Board's adjudication was bound by a less onerous standard of proof, the City argued that the Board was not bound by the Superior Court disposition. The City noted that the specified charges were different than the criminal case. Further, the City emphasized that Sullivan was not before the Board on a charge of arson. Rather, the charges included "violations of the oath of office, violating customary rules of good behavior, neglecting duty, making a false statement with the intent to deceive and doing an act which may bring credit [sic] upon the department." Mr. Sullivan countered that the charges *Page 9 
against him mirrored the very words used in the indictment that was the subject of the judgment of acquittal.
At the April 4, 1995 hearing, over Sullivan's objection, the City introduced additional evidence regarding conduct that occurred subsequent to the 1991 charges. The city did not afford Sullivan prior notice of their intent to expand the basis for his termination. Sullivan's objections to this procedural irregularity were overruled. The newly appointed Chief of the Providence Fire Department, Dimascolo, testified that he had reviewed the disciplinary case against Mr. Sullivan. He also presented the Board with four documents which alleged additional misconduct by Mr. Sullivan. Sullivan was only provided discovery of documents after objecting during Dimascolo's testimony. Over Sullivan's objection, the board admitted the documents and Dimascolo's testimony pertaining to them. Chief Dimascolo acknowledged that no action was taken against Mr. Sullivan based on the new information.
One of the documents was a February 8, 1995, Providence Police Report that alleged facts of an alcohol related motor vehicle accident. Sullivan objected to its admission on several grounds and offered that all of the allegations in it had been proven false. Dimascolo conceded he had no personal knowledge of the event and had never spoken to the involved police officer.
Over Mr. Sullivan's objection, Chief Dimascolo rendered his opinion that Sullivan should be terminated. Dimascolo said that the basis for his opinion was "the extent of the evidence." During cross examination of Chief Dimascolo, Sullivan was prevented from questioning Chief Dimascolo regarding the existence of any department policy of recommending termination for firefighters charged with misdemeanors. Sullivan objected to this.
On June 28, 1995, the Board rendered its decision terminating Sullivan's employment. The Board's decision explicitly stated that its decision was based solely on evidence heard at the *Page 10 
September 5, 1991 hearing. Although the Board stated that due to the "relaxed standards of admissibility," it had authority to take into consideration the evidence of the alleged motor vehicle violations, it clearly stated that the only evidence it was basing its decision on was that taken at the two 1991 hearings.
The Board disagreed that it was constrained by the Superior Court acquittal on the criminal charges. The Board explained that the City's burden of proof was "whether or not [the] conduct more likely or not took place." The Board noted that it followed a different evidentiary standard than the Superior Court and explained that the "full panoply of Constitutional protections" that apply before a court of law do not apply to an adjudication before the Board. The Board's decision included the following findings of fact:
 "Sullivan's wife called from a telephone at Sullivan's home claiming Sullivan was intoxicated and posed a threat to herself and their children. In response to that call [Whalen] arrived at the Sullivan home . . . [t]here, [Whalen] met Mrs. Sullivan who reiterated the information she gave in the `9-1-1' call. [Whalen] observed a totally naked individual, later identified as Sullivan, running from a motor vehicle into the [Sullivan home]. [Whalen] approached the residence and entered through the front porch . . . [Whalen] saw furniture and what appeared to be bills strewn about and approximately halfway up a staircase leading to the home's upper level, [Whalen] observed fire and some smoke. Sullivan was naked at the top of the stairs, throwing a clear liquid onto the fire. When Whalen questioned Sullivan, Sullivan became very abusive, utilizing profanity and yelling. Whalen called the Fire Department and, after their arrival, he entered the home with those firefighters in order to allow Mrs. Sullivan to gather up a sleeping infant on the second floor, at this point, Sullivan had evidently calmed."
 ***
 "[Dusso] . . . was asked by [Whalen] to inspect the premises. [Dusso] observed a pile of burnt debris that was wet and steaming but not ignited. The burnt debris had charred the stairs and the rise but had been contained to the stairwell . . . Dusso testified that upon inspection, he found the heater to be at room temperature and unscorched . . . [Dusso] ruled out accidental ignition of the spilled kerosene."
 ***
 "[Doyle's] recollection of his observations . . . are consistent with the general recollections proffered by Dusso. Doyle carefully inspected the debris and the kerosene heater and filling tank. [Doyle] stated that the heater was in good condition and unscorched and that the area around the heater was clean and *Page 11 
unscorched. The fuel container was also in good condition and did [sic.] appear to be in or near a fire/flame. Doyle ruled out the likelihood of the heater and/or the fuel container having been in a fire. [Doyle] also testified that based upon an examination of the burnt debris at, [sic.] a portion of which had been sampled and analyzed at the University of Rhode Island, the fire had been slow moving and not the type linked to ignition by kerosene. In fact, based on his past experience, Doyle did not suspect the heater as the origination of the fire because its condition was so good. Doyle also ruled out spontaneous combustion and the unintentional ignition of the kerosene."
 ***
 "Finally, the board finds it unusual that a firefighter would attempt to douse a kerosene fire with water."
Based on the above findings of fact, the Board's decision made the following conclusions.[3] Having acknowledged that, Sullivan "posited the notion that while filling a kerosene heater, the kerosene spilled and was ignited," the board found that "Sullivan's version of events sounds somewhat hollow." Further the Board concluded that "Sullivan's testimony as to the series of events resulting in the fire is overwhelmed by the clear, consistent and credible testimony against it." Thus, the Board arrived at its disposition: "the Board finds Robert Sullivan Guilty of charges I, II, III, IV, V, VI and VII. Sullivan is terminated as of 20 April, 1991."[4]
Soon after the Board issued its Decision, Sullivan filed a complaint with this Court. The complaint included several claims, including, pursuant to R.I. Gen. Laws § 45-20-1, the timely appeal of the Board's decision which this Court now addresses.
 II Standard of Review *Page 12 
This matter is governed by R. I. Gen. Laws § 45-20-1 which states in part:
 "Any fire fighter . . . aggrieved by any decision of the bureau of police and fire or any similar department, board or bureau . . . which decision orders the removal of the person from membership in the fire department . . . may present, to the superior court of the state of Rhode Island . . . a verified petition stating that the decision is illegal in whole or in part and specifying the grounds of the illegality."
This statute does not specify a standard of review. Moreover, the Rhode Island Supreme Court has not announced the appropriate standard of review for such acts.[5] The Superior Court, however, has applied a standard analogous to that of the Administrative Procedures Act.See Vierra v. Municipal Trial Bd. City of Providence, 1980 WL 336102
(R.I.Super. 1980). As such, this Court's review will be guided by R.I. Gen. Laws § 42-35-15(g), which states:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing an agency's decision under R.I. Gen. Laws § 42-35-15(g), this Court is "limited to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Nickerson v. Reitsma, 853 A.2d 1202,1205 *Page 13 
(R.I. 2004) (citing Barrington School Committee v. Rhode Island Statelabor Relations Board, 608 A.2d 1126 (R.I. 1992) (internal quotations omitted).
Under 42-35-15(g), this Court gives great deference to an agency's factual conclusions. In conducting its review, this Court "is not to substitute its judgment on questions of fact for that of the agency whose actions are under review." Barrington School Committee,608 A.2d at 1138 (citing Lemoine v. Dep't of Mental Health, Retardation andHospitals, 320 A.2d 611 (R.I. 1974). So long as there is "some or any legal evidence [in the record] to support the finding made by the [agency]" the agency's factual conclusion will be considered supported by substantial evidence. Rocha v. State of R.I. Pub. Util. Comm'n,694 A.2d 722, 727 (R.I. 1997). The term "substantial evidence" has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. OfReview of North Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quotingCaswell v. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647
(R.I. 1981)).
 III Analysis
Seeking reversal on three grounds, Sullivan argues 1) the Board's findings of fact were clearly erroneous in view of the evidence in the record; 2) the Board's choice of sanction — termination — constituted an arbitrary and capricious abuse of discretion; and 3) the Board committed three other errors of law which command reversal: the written Decision lacked a sufficient nexus between the charges preferred and the evidence on which it relied; the hearing was impermissibly tainted by allegedly inadmissible evidence; and the Board was improperly *Page 14 
influenced by non-Board member's opinion of what action the Board should take. In response, the Board submits that none of Sullivan's claims are supported by the Rhode Island Supreme Court's interpretation and application of the Administrative Procedures Act, and, for the reasons set forth below, this Court is in substantial agreement with the Board.
The four findings of fact singled out by Sullivan are not in violation of the clearly erroneous standard set forth in R.I. Gen. Laws § 42-35-15(g)(5). Under § 42-35-15(g)(5), this Court "may reverse or modify [an agency's] decision if substantial rights of the appellant have been prejudiced because the administrative findings . . . [are] clearly erroneous in view of the reliable, probative and substantial evidence on the whole record."
Under Rhode Island law, the Superior Court must uphold an agency's findings of fact when they are supported by any legally competent evidence in the record. R.I. Pub. Telecomm. Auth. v. R.I. LaborRelations Bd., 650 A.2d 479, 485 (R.I. 1994). The Court acknowledges that based on the evidence provided in the certified record, it isconceivable that Sullivan's version of events was the truth, i.e., that he started the fire accidentally. However, this Court is bound by precedent to apply an extremely deferential standard to decisions of administrative agencies.[6] When reviewing an agency's decision, the Superior Court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." R.I. Gen. Law § 42-35-15(g); Barrington Sch. Comm. v. R.I. State Labor RelationsBd. 608 A.2d 1126, 1138 (R.I. 1992). Therefore, since this Court finds the Board's findings of fact were not clearly erroneous, its analysis must stop short of considering whether this Court would have made different factual conclusions were it presented with the same evidence. *Page 15 
The Board's specific choice of sanction — deciding to terminate Sullivan's Employment, rather than imposing a lesser penalty — was not an arbitrary and capricious abuse of discretion. In, Rocha v. State ofRhode Island Public Utilities Commission, the Rhode Island Supreme Court explained that the Superior Court was not permitted to decide whether the state agency in question had imposed the correct sanction.694 A.2d 722, 726 (R.I. 1997). Rather, the role of the reviewing trial justice is to determine whether the agency decision was supported by any competent evidence contained in the record. Id. at 726.
"Even though the trial justice below might have drawn a contrary inference from that same evidence, he lacked the option of substituting his for that of the division." Rocha, 694 A.2d at 726 (citing Sartor v.Coastal Resources Management Council, 542 A.2d 1077 (R.I. 1988)). Thus, the issue merely circles back to whether there is any legally competent evidence in the record to support the Board's decision. Moreover, this Court finds pertinent the fact that Sullivan — a fireman — was arrested and charged with arson. It strains credulity that termination, rather than a less severe sanction, is either arbitrary or capricious considering the obvious relationship between the alleged indiscretion and the nature of Sullivan's occupation. Therefore, for the reasons set forth above regarding the sufficiency of the Board's findings of fact and our Supreme Court's clear rule regarding the discretion afforded agencies in their choice of sanction, this Court concludes that the Board's decision to terminate Sullivan was not arbitrary or capricious.[7] *Page 16 
This Court agrees with Sullivan that the Board's decision did not spell out a clear nexus between each of the charges preferred and the evidence presented. Indeed, in its reply brief, the Board conceded the same. However, Sullivan misstates the standard to which an administrative opinion must rise.[8] A reviewing court is not called upon to decide whether an administrative board's decision clearly articulates a nexus between the charges alleged and evidence adduced. On the contrary, a reviewing court need only be able to ascertain that there was enough evidence in the record that the agency's conclusions were not clearly erroneous.
Similarly, Sullivan mischaracterizes the degree to which the Board should have complied with the Rhode Island Rules of Evidence. Sullivan's assertion that the Board was not free to completely abandon evidentiary conventions is correct. However, "[a]dministrative hearings are not held to the same evidentiary standards as criminal or even judicial civil proceedings." In re Cross, 617 A.2d 97, 102 (citing Craig v. Pare,497 A.2d 316, 320 (R.I. 1985); Beauchamp v. De Abadia, 779 F.2d 773 (1st Cir. 1985). More specifically, "[h]earsay is quite admissible in administrative hearings." Id. Thus, Sullivan's contention that it was impermissible for the Board to hear testimony regarding statements made by Mrs. Sullivan on the night of April 20, 1991, is not supported by Rhode Island Law.
 IV Conclusion
After a review of the entire record, this Court finds sufficient evidence to support the Board's findings of fact, and further finds the Board's choice of sanction, i.e. termination, was within its discretion. Therefore, the Board's decision was neither clearly erroneous nor arbitrary *Page 17 
and capricious. Furthermore, this Court finds no other error of law commanding reversal. Accordingly, this Court affirms the Board's decision. Counsel shall submit an order for entry consistent with this Decision.
[1] In response to Sullivan's initial objections, the Board made clear that it was not bound by the rules of evidence.
[2] On the theory that the word "trial" in Chapter 27, Section 2, Paragraph 4 of the Rules and Regulations of the Department should be construed to include his criminal trial, Sullivan's original complaint includes a claim for breach of contract. By agreement of the parties, the contract claim — although its adjudication is preserved for another day — is not currently before this court. As such, this opinion does not reach its validity.
[3] These conclusions, as well as the Boards statement of disposition, appear under heading "findings of fact." Indeed, the heading "findings of fact," which appears — after an exposition of the matter's procedural background and governing rules — approximately halfway through the three and one half page decision, is the only heading employed in the decision. The board would do well in the future to more clearly delineate its findings of fact from its conclusions and disposition.
[4] Notably, as emphasized — ultimately to no avail — by petitioner, the decision is bereft of specific connections between particular charges and findings of fact.
[5] This Court's decision to apply § 42-35-15(g) is not without precedent. When other administrative statutes have failed to include an explicit standard of review, our Supreme Court has applied the standard of review embodied by § 42-35-15(g). For example, the Low and Moderate Income Housing Act, R.I. Gen. Laws § 45-53-1 et seq., does not contain an explicit standard of review. However, when reviewing appeals arising under it, our Supreme Court has applied the standard of review contained in R. I. Gen Laws § 45-24-69(d). See Kaveny v. Town of Cumberland ZoningBd. of Review, 875 A.2d 1, 7 (R.I. 2005) (citing Curran v. ChurchCommunity housing Corp., 672 A.2d 453, 454 (R.I. 1996). Substituting the words "zoning board of review" for "agency," the language of § 45-24-69(d) is identical to that of § 45-35-15(g).
[6] For example, Sullivan correctly points out that Doyle did not testify whether the fire was "the type linked to ignition by kerosene." However, Doyle was clear that he did not think the fire was caused, as Sullivan claimed, by kerosene being spilled on the heater. ("It was apparent to me that the kerosene heater and the container were in no way involved with the fire.")
[7] In response to Sullivan's argument that the Board's decision to hear testimony from Dimascolo regarding the appropriate choice of sanction "amount[ed] to an error justifying reversal," this Court seeks to distinguish what happened in the instant matter from the type of ex parte influence Our Supreme Court repudiated in Arnold v. Lebel,941 A.2d 813 (R.I. 2007). In Arnold, Our Supreme Court held that, under the Administrative Procedures Act, Department of Human Services ("DHS") hearing officers were prohibited from engaging in ex parte communications with DHS staff members and outside resources about medical assistance applicants' pending cases without giving applicants an opportunity to challenge the information gleaned through such communications. Id. at 819-21. In contrast to the situation addressed inLebel, Dimascolo's testimony was taken on the record at a hearing where Sullivan was represented by counsel who cross-examined Dimascolo at length. As such, this Court concludes that Dimascolo's testimony, i.e., his recommendation that Sullivan be terminated, was no more than one piece of evidence proper for the Board's consideration. In any case, it was given at the April 4, 1995 hearing, which according to the Board did not serve as a basis for its decision.
[8] Sullivan cites no law to support his proposition that "the Board's decision lacks reasoning which substantiates a nexus between the charges and the evidence." *Page 1