**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

---

Nos. 04-1331, 04-2045

ANDRES GUILLEMARD-GINORIO; MARIA M. NOBLE-FERNANDEZ;
CONJUGAL PARTNERSHIP GUILLEMARD-NOBLE;
LONE STAR INSURANCE PRODUCERS, INC;
JORGE R. URRUTIA-VALLES; CAROLYNE J. WIEWALL-NAVAS;
CONJUGAL PARTNERSHIP URRUTIA-WIEWALL;
URRUTIA VALLES, INC.,

Plaintiffs, Appellees,

v.

FERMIN M. CONTRERAS GOMEZ, Individually and as Insurance
Commissioner of Puerto Rico;

Defendants, Appellants,

JANE DOE; CONJUGAL PARTNERSHIP CONTRERAS-DOE;
JANE DOE; JOHN DOE,

Defendants.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Jay A. García-Gregory, <u>U.S. District Judge</u>]

---

Before

Selya, <u>Circuit Judge</u>,

Baldock,[*] <u>Senior Circuit Judge</u>,

and Howard, <u>Circuit Judge</u>.

---

[*]Of the Tenth Circuit, sitting by designation.

Luis Rodriquez-Muñoz with whom Eileen Landron Guardiola, Eduardo A. Vera Ramírez, Ivette M. Berrios Hernandez, and Landrón & Vera, LLP, were on brief, for appellants.

Joseph D. Steinfield with whom Prince Lobel, Glovsky & Tye, LLP, Charles A. Cuprill-Hernandez, and Joan S. Peters, were on brief, for appellees.

———————————

December 13, 2005

———————————

**Per Curiam**. We address two interlocutory appeals brought by Commissioner Fermin M. Contreras Gomez and the Office of the Insurance Commissioner of Puerto Rico("OIC")[1] challenging the district court's entry of a preliminary injunction and denial of a motion to dismiss on the basis of sovereign, absolute, and qualified immunity.

We take the facts from the complaint. Andres Guillemard-Ginorio and his spouse, Maria Noble-Fernandez, both well-known members of the New Progressive Party ("NPP"), have held insurance licenses as insurance agents for approximately 20 years. Guillemard and Noble have conducted their business through the entity Lone Star Insurance Producers, Inc. ("Lone Star") (collectively "Lone Star plaintiffs"). The Lone Star plaintiffs have never received any complaints regarding their services or trustworthiness.

In November and December of 2001 (after a change in government in the 2000 elections), Lone Star was audited by the OIC. The audit focused on Lone Star's sales to Puerto Rico governmental entities and sharing of commissions with an affiliated

---

[1]Plaintiffs brought this action against Contreras in both his official capacity as Commissioner of the OIC and his personal capacity. Dorelisse Juarbe succeeded Contreras as Commissioner after this action was filed, and plaintiffs added her as a defendant shortly after the motions at issue were decided in the district court.

insurance broker.[2]  Lone Star plaintiffs cooperated fully with the auditor, providing all necessary information and documentation.  At the close of the audit, the auditor informed Lone Star plaintiffs that he had discovered no irregularities and that his final report would issue in early 2002.  Since the audit, Lone Star's insurance license has been renewed twice.

In early 2002, Lone Star plaintiffs learned that Contreras was making disparaging remarks about Guillemard and Noble's membership in the NPP.  They also learned that Contreras was investigating Guillemard and Noble's personal and business affairs by ordering several banks to provide financial information about both Lone Star and its principals. On December 10, 2003, Lone Star plaintiffs filed this action seeking damages and injunctive relief against Contreras and OIC, alleging that Contreras's improper "investigation" was motivated by political animus.

On December 23, 2003, without providing notice or a hearing, Contreras issued an order that (1) declared Lone Star plaintiffs non-trustworthy and incompetent; (2) revoked Lone Star plaintiffs' insurance license for five years; (3) barred Lone Star

---

[2]Lone Star sold insurance to Puerto Rico government agencies from 1994 to 2000 as part of a consortium with licensed insurance broker Urrutia Valles, Inc.(and its principals Jorge Urrutia Valles and Carolyne Wiewall Navas)(collectively "Urrutia Valles plaintiffs"). Lone Star plaintiffs' action was consolidated with Urrutia Valles plaintiffs' similar action in the district court.  Urrutia Valles plaintiffs voluntarily dismissed their action in the district court on November 12, 2004, and Urrutia Valles plaintiffs were dismissed from this appeal on February 15, 2005.

plaintiffs from applying for another license for five years; and (4) imposed a $2,035,000 fine. The order was scheduled to become effective on January 7, 2004, but provided that Lone Star plaintiffs could request an administrative hearing to contest it.[3] The order also stated that, while a request for an administrative hearing would stay the imposition of the fine, the revocation would remain in effect pending a final administrative decision. Following receipt of the order, Lone Star plaintiffs filed an amended complaint adding claims of retaliation and violation of due process. Lone Star plaintiffs also requested a temporary restraining order to prevent the revocation from taking effect, and moved for a preliminary injunction. The district court granted the temporary restraining order and scheduled a hearing on the motion for a preliminary injunction.

After a hearing, at which only Lone Star plaintiffs chose to present evidence, the district court entered an injunction restraining Contreras and other officials at OIC from revoking Lone Star plaintiffs' license pending completion of a full and fair hearing and decision on Lone Star plaintiffs' challenge to the revocation order. In its order, the district court concluded that abstention under the Younger or Burford doctrines[4] was unwarranted

---

[3]Lone Star promptly requested this administrative hearing.

[4]As developed by the Supreme Court in Younger v. Harris, 401 U.S. 37 (1971), and Burford v. Sun Oil Co., 319 U.S. 315 (1943).

and that Contreras was not entitled to absolute immunity because his conduct was neither quasi-judicial nor quasi-prosecutorial. Contreras filed an interlocutory appeal challenging the preliminary injunction ("injunction appeal").

Shortly thereafter, Contreras filed in the district court a motion to dismiss, raising abstention and immunity issues. The court denied the motion, reaffirmed its prior conclusions regarding abstention and absolute immunity, held that Contreras was not entitled to qualified immunity, and concluded that sovereign immunity was no bar to Lone Star plaintiffs' request for injunctive relief. Contreras filed a second interlocutory appeal challenging this decision ("immunity appeal"). The appeals were consolidated for briefing and argument.

Contreras's challenge to the preliminary injunction stumbles over a fundamental issue – the existence of a live controversy. At argument, the panel inquired of both parties whether the administrative hearing that Lone Star plaintiffs requested had been held. Both sides agreed that the hearing had been held two months before argument, that the sanction had been reduced to a six-month suspension and a $200,000 fine, and that Lone Star plaintiffs had appealed the decision in the Puerto Rico court system. As the preliminary injunction's function was purely to prevent the revocation of Lone Star plaintiffs' license pending the administrative hearing and decision, the appeal therefore is

moot.  See generally Matos v. Clinton School District, 367 F.3d 68, 71-72 (1st Cir. 2004); CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc., 48 F.3d 618, 620-21 (1st Cir. 1995); Oakville Development Corp. v. FDIC, 986 F.2d 611, 613 (1st Cir. 1993).[5]  We proceed to the immunity appeal.

We note at the outset that this appeal is narrower than appellants have suggested, as only the immunity claims are properly before us.[6]  Moreover, only Contreras's claim that qualified immunity bars the claims against him in his personal capacity merits significant discussion.[7]

---

[5]Both sides essentially conceded that the injunction appeal was moot at argument, but we gave Contreras the opportunity to file a supplemental statement if he disagreed after further consideration of the issue.  No such filing has been made.

[6]There is no jurisdiction for reaching the abstention claims because the preliminary injunction appeal has been dismissed as moot and the immunity appeal does not properly extend to the abstention claims.  See generally Limone v. Condon, 372 F.3d 39, 50 (1st Cir. 2004)(interlocutory review of qualified immunity issue does not confer jurisdiction over other issues in the case).

[7]Contreras also claims that sovereign immunity and absolute immunity shield him.  Contreras is correct that sovereign immunity shields an officer in his official capacity from monetary damages, see Nieves-Marquez v. Commonwealth of Puerto-Rico, 353 F.3d 108, 123 (1st Cir. 2003), but the Lone Star plaintiffs' complaint also seeks declaratory and prospective injunctive relief against him and such claims are not barred by sovereign immunity.  We note that Contreras's argument on this issue has lumped the claims against the OIC and those against Contreras together.  This is inappropriate, as Contreras may properly be subject to prospective injunctive relief but not so the agency.  See id. at 114 n. 1. Lone Star plaintiffs have acknowledged as much in their brief, noting that dismissal of the OIC would not impact upon their case.

With respect to absolute immunity, Contreras argues that his

To determine whether a government official is entitled to qualified immunity we consider: "(1) whether plaintiff's allegations, if true establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004). As the case comes to us in the context of a motion to dismiss, we must ask "whether the facts alleged, viewed in the light most favorable to the complaining party, show that the [defendant's] conduct violated some constitutional right." Limone, 372 F.3d at 44.

As to the first prong, Contreras argues, with little explanation, that Lone Star's complaint fails because the district court is required to abstain under Younger or Burford and that the

---

actions in investigating insurers and suspending their licenses were essentially judicial or quasi-judicial. See Destek Group, Inc. v. New Hampshire Public Utilities Commission, 318 F.3d 32, 41 (1st Cir. 2003)("Absolute immunity is available to certain 'quasi judicial' agency officials who, irrespective of their title, perform functions essentially similar to those of judges . . . in a setting similar to that of a court")(internal quotation and citation omitted). However, Lone Star plaintiffs allege that Contreras suspended their insurance license, essentially by fiat, without notice or a hearing. Contreras's activities, as pleaded, bear no resemblance to what one normally considers "judicial" functions. See generally Diblasio v. Novello, 344 F.3d 292, 296-302 (2d Cir. 2003)(summary suspension process too dissimilar to judicial process to warrant absolute immunity). Thus, at least for purposes of a motion to dismiss, Contreras is not entitled to absolute immunity.

complaint fails to adequately plead a due process violation.[8]  The abstention issue is not relevant in a qualified immunity analysis. As to the unexplained inadequacy of the due process allegations, Contreras appears to be trying to enforce a heightened pleading requirement.  No such requirement exists.  See, e.g., Centro Medico Del Turabo, Inc. v. Feliciano De Melecio, 406 F.3d 1, 5 (1st Cir. 2005).  Our review of the complaint reveals that the district court correctly determined that the complaint alleges at least three constitutional violations, one of procedural due process (deprivation of property without a hearing) and two under the First Amendment (political discrimination and retaliation).

As to the second prong, Contreras concedes that Lone Star plaintiffs have a property interest in the license and that a hearing is typically required before the State may deprive an individual of his property.  Given the weight of authority, it would be hard to suggest otherwise.  See, e.g., Bell v. Burson, 402 U.S. 535, 542 (1971)("except in emergency situations . . . due process requires that when a State seeks to terminate an interest such as that here involved, it must afford notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective")(internal quotation and citation omitted); Mard v. Town of Amherst, 350 F.3d 184, 192 (1st Cir.

_____

[8]Contreras only challenges the due process portion of Lone Star plaintiffs' complaint.

-9-

2003)( "[i]n general, the state must provide some kind of hearing before depriving an individual of a protected property interest")(internal quotation and citation omitted); Beauchamp v. Abadia, 779 F.2d 773, 775 (1st Cir. 1985)(physician entitled to hearing before license could be revoked).  Nonetheless, Contreras argues the rule is not clearly established, pointing to authority allowing prehearing suspensions of certain property rights in certain circumstances.  See Gilbert v. Homar, 520 U.S. 924 (1997); FDIC v. Mallen, 486 U.S.  230 (1988).

Both Gilbert and Mallen acknowledge that due process can sometimes be satisfied by a post-deprivation hearing.  However, the circumstances in which a post-deprivation hearing is adequate are narrow:

> An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation.

Mallen, 486 U.S. at 240; see also Gilbert, 520 U.S. at 930-31. Contreras claims that his actions meet this standard.

This argument cannot succeed at the motion to dismiss stage because the argument requires the development of the factual record.  See Mihos, 358 F.3d at 99 ("[w]hen motion to dismiss is based on the complaint . . . the facts alleged in the complaint control").  There is nothing in the pleading record establishing urgency, a special government interest, or "substantial assurance"

-10-

that the deprivation was not baseless. Indeed, the only "substantial assurance" Contreras refers to is his two-year investigation, which the Lone Star plaintiffs allege was wrongful and motivated by political animus. This is in marked contrast to the situations described in Mallen and Gilbert, where the "substantial assurance" that the deprivation was warranted came in the form of the initiation of a criminal prosecution by independent third parties. See 486 U.S. at 241; 520 U.S. at 934.

As to the third prong of the qualified immunity test, given the facts alleged in the complaint, we have no difficulty concluding that a reasonable official in Contreras's position would have known that instigating an investigation to punish Lone Star plaintiffs for their political beliefs, and terminating their insurance license without notice or a hearing in retaliation for their filing of a legal action would violate their constitutional rights. See generally Mihos, 358 F.3d at 110. Contreras's argument -- that his two-year investigation gave him sufficient information of wrongdoing on the part of Lone Star plaintiffs to give rise to a reasonable belief that a pre-hearing suspension was justified -- is directly contrary to Lone Star plaintiffs' allegations, which must be accepted as true for purposes of the motion to dismiss. Contreras will have the opportunity to develop these arguments during discovery. See id. at 98-9 (denial of qualified immunity simply means that the case may go forward).

For the reasons stated above, the appeal of the district court's order granting a preliminary injunction is **dismissed** as moot, and the decision of the district court denying the motion to dismiss on the grounds of immunity is **affirmed**.

**So ordered.**