# United States Court of Appeals
## For the First Circuit

Nos. 06-1436, 06-1819

ANDRÉS GUILLEMARD-GINORIO; MARÍA M. NOBLE-FERNÁNDEZ;
CONJUGAL PARTNERSHIP GUILLEMARD-NOBLE;
LONE STAR INSURANCE PRODUCERS, INC.,
Plaintiffs, Appellees,

v.

FERMÍN M. CONTRERAS-GÓMEZ, Individually and as Insurance
Commissioner of Puerto Rico; OFFICE OF THE INSURANCE
COMMISSIONER; MARÍA AWILDA QUINTANA; CONJUGAL PARTNERSHIP
CONTRERAS-QUINTANA; DORELISSE JUARBE, Individually and as
Insurance Commissioner of Puerto Rico,
Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and DiClerico, Jr.,* Senior District Judge.

Luis A. Rodríguez-Muñoz, with whom Roberto Sánchez-Ramos,
Secretary of Justice, Salvador Antonetti-Stutts, Solicitor General,
Eduardo A. Vera-Ramírez, Eileen Landrón-Guardiola, and Landrón &
Vera, LLP were on brief, for appellants.
Joseph D. Steinfield, with whom Jeffrey J. Pyle, Prince,
Lobel, Glovsky & Tye, LLP, Joan S. Peters, and Nachman & Guillemard
were on brief, for appellees.

June 12, 2007

---

*  Of the District of New Hampshire, sitting by designation.

**TORRUELLA**, <u>Circuit Judge</u>. This appeal arises out of a dispute over the propriety of an order issued by the Insurance Commissioner of Puerto Rico declaring Andrés Guillemard Ginorio, his wife, María Noble Fernández, and their insurance agency, Lone Star Insurance Producers (collectively, "Plaintiffs"), untrustworthy and incompetent; revoking Plaintiffs' insurance licenses for five years; barring Plaintiffs from applying for other insurance licenses for five years; and imposing a $2,035,000 fine.

Plaintiffs allege, <u>inter alia</u>, that in issuing this order without a hearing and in retaliation for their political beliefs, Fermín Contreras Gómez, former Insurance Commissioner, and Dorelisse Juarbe, the current Insurance Commissioner (collectively "Defendants"), violated Plaintiffs' rights under the First Amendment and the Due Process Clause. Plaintiffs moved for partial summary judgment on their due process claim and Defendants moved for summary judgment on all claims. The district court granted Plaintiffs' motion for partial summary judgment and denied Defendants' motion. Defendants now appeal. In addition, Defendants also take this opportunity to appeal the district court's denial of their motion to vacate the court's judgment under Fed. R. Civ. P. 60(b) based on newly discovered evidence. After careful consideration, we affirm the district court's denial of qualified immunity and dismiss any appeal taken from the court's

-2-

grant of partial summary judgment or its denial of the motion to vacate.

## I. Factual and Procedural Background

Guillemard and Noble founded Lone Star Insurance Producers in 1984. Both are well-known members of the New Progressive Party ("NPP").

Early in 2001, Contreras became the Insurance Commissioner for Puerto Rico. On November 2, 2001, the Office of the Insurance Commissioner ("OIC") assigned Angela Rivera to investigate Urrutia Vallés, Inc. ("UVI"), an insurance brokerage company, for its conduct in connection with the performance of a contract with the government of Puerto Rico. For several years, Lone Star and UVI had worked together in obtaining and servicing property, casualty, and other types of insurance for several government agencies. Pursuant to the investigation, Rivera found that UVI paid commissions to Lone Star from the sale of the government insurance policies.

On November 7, 2001, an article in El Nuevo Día, a Puerto Rico newspaper, reported that the OIC investigation into UVI would also include Guillemard. That same day, Aurea López, the head of the OIC's audit division, instructed Rivera to look for checks from UVI to Lone Star.

On November 20, 2001, the OIC issued a "Notification and Examination Order" calling for an audit of Lone Star's operations

and transactions from January 1, 1997 through September 30, 2001. The notice did not allege any wrongdoing. David Castro Anaya, an OIC auditor, was assigned to perform the Lone Star audit. According to Castro, the sole purpose of his investigation was to determine whether improper payments had been made to third parties. Guillemard made available to Castro two Certified Public Accountants to cooperate with the audit and provide all relevant documents.

By December 17, 2001, all of the documents pertaining to insurance issued to government agencies had been examined and the audit had concluded. Castro informed Guillemard and Miguel Carbonell, Lone Star's CPA, that he found no irregularities or improprieties. Castro also told Guillemard and Carbonell that he would prepare a draft of his final report within the next few months and send them a copy.

At some point after November 20, 2001, but before March 2002, Melvin Rosario, the Director of the Anti-Fraud Unit at the OIC and Castro's supervisor, met privately with Contreras to tell him that he did not wish to investigate Lone Star for commission sharing. He explained that the sharing of commissions, as in the case of Lone Star and UVI, "was common, normal, in the way that business was conducted. And that [his] opinion in that regard was that [he] had not seen, in all honesty, anything in the Insurance Code indicating that this could not be done that way." In

-4-

response, Contreras told Rosario that he "would have to carry [out] the investigations against this N.P.P. member" anyway. Rosario asked to be relieved from the assignment, and Contreras agreed that Castro would report to López instead.

Early in 2002, Guillemard learned that the OIC had issued subpoenas to several Puerto Rico banks demanding account information for all transactions involving Guillemard, Noble, or Lone Star.

On July 10, 2003, Castro submitted the Final Investigation Findings Report (the "Report") relating to the Lone Star audit to his supervisor. He did not send a copy to Guillemard. The Report found no improper payments to third parties, but it raised other issues. In particular, the Report noted that Lone Star had entered into a commission-sharing arrangement with UVI. The Report concluded that the sharing of commissions is a violation of section 939(2) of the Puerto Rico Insurance Code.

At the end of 2003, Plaintiffs were still being investigated by the OIC. On December 10, 2003, Plaintiffs filed a federal action against Contreras and the OIC, alleging that the investigation was motivated by political animus in violation of their rights under the First and Fourteenth Amendments. At that time, the OIC had not issued any reports or orders in connection

with the Lone Star investigation since the submission of Castro's July report.

Contreras found out about Plaintiffs' lawsuit by the following day.[1] On December 23, 2003, Contreras issued an order declaring Plaintiffs incompetent and untrustworthy, revoking their insurance licenses for a period of five years; denying them any license in any capacity for a period of five years; and imposing a fine of $2,035,000 (the "Order"). The Order stated that it would become effective on January 7, 2004, but provided that Plaintiffs could request an administrative hearing to contest it. The Order also stated that a request for an administrative hearing would stay the imposition of the fine, the declaration that Plaintiffs were incompetent and untrustworthy, and the denial of any license in any capacity. However, pursuant to the Order, the revocation of Plaintiffs' licenses would remain in effect pending a final administrative decision.

Following receipt of the Order, Plaintiffs promptly requested an administrative hearing. They also amended their complaint to allege claims of retaliation under the First Amendment and violation of the Due Process and Equal Protection Clauses, as well as state law provisions. In addition, Plaintiffs requested a temporary restraining order to prevent the revocation from taking

---

[1] By this time, Contreras had submitted his resignation as Insurance Commissioner, effective at the end of December.

-6-

effect, and moved for a preliminary injunction. The district court granted the temporary restraining order and scheduled a hearing on the motion for a preliminary injunction. After a hearing, at which only Plaintiffs chose to present evidence, the district court entered an injunction restraining Contreras and the OIC from revoking Plaintiffs' license pending completion of a full and fair hearing on Plaintiffs' challenge to the revocation order. In its order, the district court also concluded that Contreras was not entitled to qualified immunity. Contreras filed an interlocutory appeal challenging the preliminary injunction.

Shortly thereafter, Contreras moved to dismiss the federal lawsuit on qualified immunity grounds. The court denied the motion, reaffirming its prior conclusions. Contreras then filed a second interlocutory appeal challenging this decision. The two interlocutory appeals were consolidated and in a per curiam decision, this court affirmed the district court's conclusion that Contreras was not entitled to qualified immunity on the due process claim. 161 Fed. Appx. 24 (1st Cir. 2005).[2]

The OIC held an administrative hearing on March 4, 2005. Thereafter, the new Insurance Commissioner, Dorelisse Juarbe, issued a resolution finding that Plaintiffs had violated the Insurance Code, but revising the sanctions as follows: The fine of

_____

[2] We explicitly noted that "Contreras only challenge[d] the due process portion of [Plaintiffs'] complaint." 161 Fed. Appx. at 28 n.8.

-7-

over $2,035,000 was reduced to $208,000; the five-year license suspension was reduced to three months; the prohibition of filing for a license within five years was eliminated; and the references within Contreras's order as to Guillemard's "untrustworthiness" and "incompetence" were omitted.

Back in the district court, Plaintiffs again amended their complaint to add Juarbe as a defendant. The parties subsequently filed cross-motions. Plaintiffs moved for partial summary judgment, arguing that Contreras violated their due process rights. Defendants moved for summary judgment, arguing that Plaintiffs had failed to establish violations of the First Amendment, the Due Process Clause, or the Equal Protection Clause, and that Contreras and Juarbe were entitled to qualified immunity on the due process claim.

The district court referred both motions to a magistrate judge. In a report and recommendation (the "R&R"), the magistrate judge recommended that Plaintiffs' motion for partial summary judgment be denied, and Defendants' motion for summary judgment be granted as to the equal protection claim and denied as to the remaining issues. All parties objected to the R&R. In particular, Defendants argued that they were entitled to qualified immunity on all claims.

The district court adopted the R&R in part and rejected it in part: it granted Plaintiffs' motion for partial summary

judgment on the due process claim and denied Defendants' motion for summary judgment on all claims. With respect to Defendants' claim qualified immunity on the due process claim, the district court held that Defendants were not entitled to summary judgment because a material issue of fact remained as to the third prong of the qualified immunity analysis, whether "a reasonable official in Contreras's position would have been justified in revoking plaintiffs' license without a prior hearing." With respect to their assertion of qualified immunity on the other claims, however, the district court held that "[b]ecause the defendants did not properly raise these arguments before the Magistrate-Judge, the Court will consider their assertion of qualified immunity in relation only to the due process claim."

Defendants later filed a motion to vacate the district court's judgment pursuant to Fed. R. Civ. P. 60(b) based on the newly discovered evidence of a Puerto Rico appellate court decision holding that an interpretation that the Insurance Code prohibits commission sharing was reasonable. On April 3, 2006, the district court denied the motion to vacate, finding that the Puerto Rico appellate court decision was irrelevant to its ruling.

On August 7, 2006, this Court ruled that Defendants were entitled to appeal the district court's decision with respect to qualified immunity on the due process claim, noting that Defendants had conceded for purposes of appeal the factual issues the district

court had found to be in dispute.  On September 8, 2006, we modified the earlier order and ruled that appellate jurisdiction also extends to the issue of whether the district court erred in finding that Defendants had failed to adequately assert qualified immunity with respect to the First Amendment claims.

## II. **Discussion**

## A. **Qualified Immunity on the First Amendment Claims**

We review for abuse of discretion the district court's conclusion that Defendants were not entitled to qualified immunity on the First Amendment claims of political discrimination and retaliation because they had failed to adequately assert the argument before the magistrate judge.[3]

---

[3] In our September 8, 2006 Order, we extended appellate jurisdiction to this issue, noting that "case management orders precluding the assertion of the defense of qualified immunity are reviewable, and the circumstances here seem analogous."  We review case management orders for abuse of discretion.  Rosario-Díaz v. Gonzáles, 140 F.3d 312, 315 (1st Cir. 1998).

Although Defendants conceded in their initial brief that the district court's ruling was a case management order, they objected to that characterization in their reply brief, without suggesting an alternative characterization or arguing for a different standard of review.  Defendants cannot have it both ways.  See Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 299 (1st Cir. 2000) ("We have held, with a regularity bordering on the monotonous, that issues advanced for the first time in an appellant's reply brief are deemed waived.").  In any event, we have previously held that a denial of summary judgment on qualified immunity issues for procedural reasons constitutes a case-management order, see, e.g., Torres v. Commonwealth of Puerto Rico, No. 06-1771, 2007 WL 996302 at *4 (1st Cir. Apr. 4, 2007), and we see no reason why the district court's ruling in this case should not also fall into this category.

-10-

Defendants argue that the district court erred in refusing to entertain their arguments on qualified immunity with respect to the First Amendment claims. Specifically, they object to the holding that "the defendants did not properly raise these arguments before the Magistrate-Judge." Defendants claim that they raised this defense in their motion for summary judgment when they argued "broadly" that they were entitled to qualified immunity. Defendants point to three sentences in their motion for summary judgment which purportedly preserved their argument: (1) "[D]efendants herein did not engage in any type of conduct that was violative of any of plaintiffs' constitutional rights; hence it is not plausible to conclude that defendants' actions were unlawful. Thus, this entitles defendants to qualified immunity," Defs.' Mot. for Summ. J. 26 (emphasis added); (2) "Moreover, the application as a matter of law of both the Mt. Healthy and privileged qualified immunity defenses warrants summary disposition of all claims at this stage of the proceedings," id. at 2 (emphasis added); and (3) "Defendants in their personal capacity cannot be held liable in this case because they are cloaked by qualified immunity," id. at 25.

Defendants further argue that the specific reference to Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 283-284 (1977) (holding that adverse action against a government employee cannot be taken if it is in response to the employee's "exercise of

-11-

constitutionally protected First Amendment freedoms"), in their motion's discussion of qualified immunity shows that Defendants asserted a qualified immunity defense to the First Amendment claims because Mt. Healthy is only relevant to the First Amendment.

Had Defendants raised a qualified immunity defense to the First Amendment claims before the magistrate judge, they would have been entitled to the district court's "clearly erroneous or contrary to law" review of the argument. See 28 U.S.C. § 636(b)(1)(A). But "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." De Araujo v. González, 457 F.3d 146, 153 (1st 2006) (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)). By Defendants' own admission, their arguments on this point were "broad in scope," which means they can just as easily be characterized as "vague"; the qualified immunity section of their summary judgment motion never even mentioned the words "First Amendment," "political discrimination," or "retaliation." We cannot say that Defendants' three sentences speaking to qualified immunity "broadly" and their single reference to Mt. Healthy satisfied their duty "to spell out [their] arguments squarely and distinctly." Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990 (1st Cir. 1988). Accordingly, we hold that the district court did not abuse its discretion in holding that Defendants waived their qualified immunity defense to the First

-12-

Amendment claims.  See id. at 990-91 ("[Fed. R. Civ. P. 72(b)] does
not permit a litigant to present new initiatives to the district
judge.  We hold categorically that an unsuccessful party is not
entitled as of right to de novo review by the judge of an argument
never seasonably raised before the magistrate."); Borden v. Sec'y
of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987) ("Appellant
was entitled to a de novo review by the district court of the
[magistrate judge's] recommendations to which he objected, however
he was not entitled to a de novo review of an argument never
raised." (internal citations omitted)).

## B. Qualified Immunity on the Due Process Claim[4]

---

[4] Acknowledging that "courts have held that appellate jurisdiction
does not lie for an order granting partial summary judgment absent
certification under [Fed. R. Civ. P. 54]," Defendants nonetheless
ask us to review the district court's grant of Plaintiffs' motion
for partial summary judgment on the due process claims without such
certification.

   In the ordinary course, our jurisdiction extends only to appeals
from "final decisions of the district courts."  28 U.S.C. § 1291.
"A partial summary judgment order is not a final judgment but is
merely a pre-trial adjudication that certain issues are established
for trial." Alberty-Vélez v. Corporación de Puerto Rico Para La
Difusión Pública, 361 F.3d 1, 6 n.5 (1st Cir. 2004); see also
Catlin v. United States, 324 U.S. 229, 233 (1945) (holding that a
district court's decision is "final" if it "ends the litigation on
the merits and leaves nothing for the court to do but execute the
judgment").  Defendants have given us no reason to depart from the
well-established rule of reviewing only a district court's final
decisions.  See Manchester Knitted Fashions, Inc. v. Amalgamated
Cotton Garment & Allied Indus. Fund, 967 F.2d 688, 690 (1st Cir.
1992) ("It is generally established that in order for an
interlocutory order to be appealable, a litigant must . . . show
that 'the order of the district court might have a serious, perhaps
irreparable, consequence, and that the order can be effectually
challenged.'" (quoting Carson v. Am. Brands, Inc., 450 U.S. 79, 84

"Qualified immunity 'provides a safe harbor for public officials acting under the color of state law who would otherwise be liable under 42 U.S.C. § 1983 for infringing the constitutional rights of private parties.'" Borges Colón v. Román-Abreu, 438 F.3d 1, 18 (1st Cir. 2006) (quoting Whitfield v. Meléndez-Rivera, 431 F.3d 1, 6 (1st Cir. 2005)). We apply a three-part test to determine whether a public official is entitled to qualified immunity, asking "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004). If all three questions are answered in the affirmative, we deny qualified immunity. Id. at 110. Defendants argue that, even assuming the first two prongs are satisfied, they are entitled to qualified immunity under the third prong of the test because a similarly situated reasonable official would not have believed that the pre-hearing deprivation violated Plaintiffs' rights to procedural due process.

We review a district court's denial of summary judgment on qualified immunity grounds de novo, considering only purely

(1981)).  Accordingly, we will not review whether the district court properly granted partial summary judgment on Plaintiffs' procedural due process claim.

-14-

legal questions. <u>Suboh</u> v. <u>Dist. Attorney's Office</u>, 298 F.3d 81, 90 (1st Cir. 2002).

With respect to Contreras, Defendants argue that he is entitled to qualified immunity because he was acting pursuant to a presumptively constitutional statute. Defendants point out that the Puerto Rico Insurance Code authorizes the Insurance Commissioner to "suspend, revoke or refuse to renew a license" by issuing an "order . . . to licensee not less than fifteen days prior to the effective date thereof, subject to the right of the licensee to have a hearing," and provides that "pending such hearing, the license shall be suspended." P.R. Laws Ann. tit. 26, § 947(2)(a). Defendants further point out that, as with all state statutes, this statutory provision is presumed to be constitutional, <u>see</u> <u>Conn. ex rel Blumenthal</u> v. <u>Crotty</u>, 346 F.3d 84, 102 (2d Cir. 2003), and that no court had, during the relevant time period, found the statute unconstitutional. Accordingly, Defendants argue that even if section 947(2)(a) is now deemed unconstitutional, Contreras is entitled to qualified immunity for his good faith reliance on the presumptively valid provisions of the Insurance Code. <u>See</u> <u>Freeman</u> v. <u>Blair</u>, 862 F.2d 1330, 1332 (8th Cir. 1988) (holding that defendants were entitled to qualified immunity where "any defects in the regulatory scheme were not sufficiently obvious to make the defendants' reliance on the scheme objectively unreasonable").

With respect to Juarbe, Defendants argue that she is entitled to qualified immunity on the due process claim because she did not draft or sign the Order, she was not Contreras's supervisor at the time of the issuance of the Order, and she was not present during the conversation in which Contreras allegedly told Rosario that he "would have to carry [out] the investigations against this N.P.P. member." Thus, Defendants argue that there is no connection between Juarbe's conduct and the alleged constitutional violation of revoking Plaintiffs' licenses without a hearing. We do not think this argument goes to qualified immunity so much as to the ultimate question of liability under § 1983, a question not properly before us. See Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 560 (1st Cir. 1989) ("Section 1983 imposes liability upon those who 'subject[] or cause[] to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'" (quoting 42 U.S.C. § 1983) (emphasis added) (other alterations in original)). In any event, Defendants acknowledge that Juarbe participated in meetings in which the Order was being drafted and that she enforced the Order after it was issued. We think any reasonable official in Contreras's or Juarbe's situation would have known that the summary revocation provision in the Insurance Code is unconstitutional; therefore, qualified immunity is available to neither defendant.

-16-

First, to the extent Contreras or Juarbe acted in reliance on section 947(2)(a), enacted in 1957, we find such reliance unreasonable because that statute is no longer in effect, having been superseded by the Puerto Rico Uniform Administrative Procedure Act, P.R. Laws Ann. tit. 3, § 2101 et seq. (the "Puerto Rico APA"). In Chalkboard, Inc. v. Brandt, 902 F.2d 1357 (9th Cir. 1989), the Ninth Circuit examined a factual scenario very similar to this case. There, an agency summarily suspended a day care center's license under a statute that allowed for such suspension in emergency situations. Id. at 1377-78. However, a later-enacted statutory provision required that the agency notify the attorney general of any emergency circumstances, after which the attorney general could seek a restraining order. Id. at 1378-79. The Chalkboard court denied qualified immunity, holding that the summary closure procedures "used by defendants in th[at] case could not reasonably have been believed to meet constitutional requirements." Id. at 1380-81. In so holding, the Ninth Circuit specifically noted that it could not

> accept the contention that a general purpose summary-closure provision enacted years earlier remains at the disposal of the DHS officials when the state has adopted a more recent and specific statutory scheme which provides for both routine and expedited methods of suspending the license . . . and which does not permit summary action by agency officials.

Id. at 1379.

-17-

Neither party disputes that the Puerto Rico APA provides for pre-deprivation hearings at all agency levels. See P.R. Laws Ann. tit. 3, §§ 2102-2103, 2151-2170(a); see also Magriz v. Empresas Nativas, Inc., 143 P.R. Dec. 63, 70 (1997). Enacted in 1988, it requires all agencies adjudicating a controversy to safeguard "(A) [t]he right to timely notice of the charges or complaints or claims against one of the parties[;] (B) [t]he right to introduce evidence[;] (C) [t]he right to an impartial adjudication[; and] (D) [t]he right to have the decision based on the record of the case." P.R. Laws Ann. tit. 3, § 2151(a)(2). The Supreme Court of Puerto Rico has held that the Puerto Rico APA expressly supersedes any conflicting statutes. See Hernández v. Golden Tower Dev. Corp., 125 P.R. Dec. 744, 749 (1990) ("[I]t is the express intent of the lawmaker, in adopting a uniform judicial review procedure for rulings or orders of administrative agencies or departments, that [the Puerto Rico APA] prevail over any other legal provision -- appertaining to any agency in particular -- that may be repugnant to the provisions of said act."); Asociación de Dueños de Casas de la Parguera, Inc. v. Junta de Planificación de P.R., 148 D.P.R. 307, 314 (1999). Given the Puerto Rico APA's pre-deprivation hearing requirement, any claimed reliance on section

-18-

947's summary-revocation provision is unreasonable as a matter of law.[5]

We also find reliance on section 947(2)(a) unreasonable because the statute is patently unconstitutional.  Although state officials are ordinarily entitled to rely on presumptively valid state statutes, courts have held such reliance unreasonable where the relevant law is "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws."  Michigan v. DeFillippo, 443 U.S. 31, 38 (1979); See, e.g., Lawrence v. Reed, 406 F.3d 1224, 1232 (10th Cir. 2005) (denying qualified immunity to an official who relied on an ordinance allowing for the destruction of derelict automobiles without a hearing because the official could not reasonably have concluded that his actions were consistent with due process); Carey v. Nev. Gaming Control Bd., 279 F.3d 873, 882 (9th Cir. 2002) (denying qualified immunity to an official who relied on statutes requiring individuals stopped pursuant to Terry to identify themselves because "a reasonable officer in [the defendant's]

---

[5]  Defendants argue that Contreras's and Juarbe's actions were reasonable, even under the Puerto Rico APA, because that statute provides for exceptions to the pre-deprivation hearing requirement. See P.R. Laws Ann. tit. 3, § 2167.  However, the Puerto Rico APA provision authorizing such exceptions provides for "emergency adjudicatory procedures" only in situations that involve "imminent danger to the public health, safety and welfare or which requires immediate action by the agency." Id. § 2167(a).  Defendants do not argue that this case involved an emergency situation.

position would have known that [the plaintiff] had a clearly established Fourth Amendment right not to identify himself").

Section 947(2)(a) is patently unconstitutional because it specifically provides for the suspension of a professional license before a hearing is provided, without limitation. P.R. Laws Ann. tit. 26, § 947(2)(a). It has long been established that a state may not suspend a professional license without a pre-deprivation hearing.[6] See Beauchamp v. De Abadia, 779 F.2d 773, 775 (1st Cir. 1985) ("Beauchamp unquestionably had a protected interest in his license to practice medicine. A clearer example of 'new property' is not easily imagined. The district court's holding that he had a right to a hearing before his license could be revoked was correct." (internal citations omitted)); see also Mard v. Town of Amherst, 350 F.3d 184, 192 (1st Cir. 2003)("In general, the state must provide some kind of hearing before depriving an individual of a protected property interest." (internal quotation marks omitted)).[7] Thus, we find that Defendants are not entitled to rely

---

[6] That "[a]n important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation," FDIC v. Mallen, 486 U.S. 230, 240 (1988), does not change our conclusion. Section 947 does not limit its application to any such circumstances. Moreover, Defendants do not point to any special government interest motivating the pre-hearing deprivation described in the Order.

[7] Defendants argue that section 947 is not unconstitutional on its face because "it does not preclude a hearing prior to the revocation or refusal to renew a license." Appellants' Reply Br.

-20-

on section 947(2)(a)'s allowance for pre-hearing deprivations because a reasonable official in their position would have known that it violates the Due Process Clause. Accordingly, we affirm the district court's denial of Defendants' motion for summary judgment.

### III. <u>Motion to Vacate</u>

Defendants also argue that the district court erred in denying their motion to vacate the summary judgment order. They claim that "newly discovered evidence" -- a Puerto Rico appellate court decision finding that an interpretation that the Insurance Code prohibits commission sharing was reasonable -- shows that Defendants would have punished Plaintiffs' conduct regardless of their political affiliation. This argument is a defense against Plaintiffs' First Amendment political discrimination claim; it has no effect on the due process claim, which is based solely on the alleged pre-hearing deprivation.

We reiterate that this Court may only hear appeals taken from final judgments, <u>see</u> <u>supra</u> note 3. Accordingly, we do not have jurisdiction to review a motion to vacate the district court's denial of summary judgment on the political discrimination claim.

---

17 (emphasis added). But this misses the point; section 947(a)(2) is unconstitutional because it <u>authorizes</u> a pre-hearing deprivation. It should also be noted that Contreras exercised this authority when he issued the Order, which specifically provided that the revocation of Plaintiffs' licenses would be effective pending any administrative proceedings.

See <u>Rivera-Jiménez</u> v. <u>Pierluisi</u>, 362 F.3d 87, 93 (1st Cir. 2004) ("[W]e do not have jurisdiction over denials of summary judgment motions . . . where a genuine issue of material fact remains in dispute."). Moreover, as stated above, Defendants waived a qualified immunity defense to the First Amendment claims, <u>see</u> <u>supra</u> Section II.A, so we have no occasion to opine on that argument. As such, we take no view of the district court's denial of Defendants' motion to vacate.

## IV. <u>Conclusion</u>

For the foregoing reasons, we affirm the district court's denial of Defendants' qualified immunity claims on summary judgment.

**<u>Affirmed</u>**.